UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
VICTOR JUZUMAS,

                Plaintiff,

      – against –

NASSAU COUNTY, *et al.*,

                Defendant.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

2:17-cv-03049 (AMD) (JO)

**ANN M. DONNELLY**, United States District Judge:

On May 21, 2017, Victor Juzumas brought this action against Nassau County and five unidentified "John Doe" Nassau County police officers.[1] He alleges violations of his First, Second, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, a Section 1983 conspiracy, and *Monell* liability. The parties cross-moved for summary judgment. I held oral argument on September 19, 2019. For the reasons that follow, the parties' motions are granted in part and denied in part.

## BACKGROUND

### I. The Law

New York State's firearm regulations define different types of guns. A "firearm" is a pistol, a revolver, a sawed-off[2] shotgun or rifle, or an assault weapon. N.Y. Penal Law § 265.00(3). A "rifle" is "a weapon . . . intended to be fired from the shoulder [that] use[s] the

---

[1] The plaintiff did not amend his complaint to identify the John Doe police officers. However, because the Nassau County Police Commissioner is responsible for enforcing gun regulations in Nassau County, and a Nassau County police officer, Lieutenant Marc Timpano, testified at a deposition about firearm and longarm regulations in Nassau County, I analyze the case against Nassau County. The plaintiff's case against the five John Doe police officers is dismissed.

[2] "Sawed-off" shotguns and rifles include shotguns with barrels less than eighteen inches long, rifles with barrels less than sixteen inches long, and "any weapon made from a shotgun or rifle" with an overall length less than twenty-six inches. *Id.*

energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger." *Id.* at § 265.00(11). A "shotgun" is "a weapon . . . intended to be fired from the shoulder [that] use[s] the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger." *Id.* at § 265.00(12). Rifles and shotguns are known as long guns or longarms. *See Dudek v. Nassau Cnty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 407 n.7 (E.D.N.Y. 2013) (comparing longarms with other guns).

New York State prohibits the possession of a firearm without a license. N.Y. Penal Law § 265.20(a)(3). Section 400.00 of the New York Penal Law – "the exclusive statutory mechanism for the licensing of firearms in New York State" *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85-86 (2d Cir. 2012) (citation omitted) – provides licensing officers[3] with "broad discretion in determining whether to issue or revoke a license to possess firearms." *Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 231 (E.D.N.Y. 2019) (citation omitted). Applicants for firearm licenses must meet certain criteria, including:

- They must be twenty-one years old or older, and of good moral character.
- They must not have convictions for a felony or serious offense.
- They must not have a history of mental illness.
- There must be "no good cause . . . for the denial of the license."

*See* N.Y. Penal Law § 400.00(1).

Longarms, on the other hand, "pose a unique legal issue because, unlike other firearms, 'there is no license requirement for the purchase or possession of longarms.'" *Panzella v. Cnty. of Nassau*, No. 13-CV-5640, 2015 WL 5607750, at *1 (E.D.N.Y. Aug. 26, 2015) (citing *Razzano v. Cnty. of Nassau*, 765 F. Supp. 2d 176, 180 (E.D.N.Y. 2011)). Nevertheless, the possession of

---

[3] In Nassau County, the licensing officer is the Nassau County Police Commissioner. *See* N.Y. Penal Law § 265.00(10).

longarms is subject to some regulation in New York. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85 n.3 (2d Cir. 2012) (citing N.Y. Penal Law § 265.01(3) (prohibiting longarms on school grounds) and N.Y. Penal Law § 265.05 (prohibiting children less than sixteen years old from possessing longarms without a hunting permit)).

Firearm licensing and longarm regulation converge in Section 400.00's subsection on license revocation and suspension. *See* N.Y. Penal Law § 400.00(11). Section 400.00(11)(a) provides the following:

> (a) The conviction of a licensee anywhere of a felony or serious offense **or a licensee at any time becoming ineligible to obtain a license under this section** shall operate as a revocation of the license. A license may be revoked or suspended as provided for in section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act. Except for a license issued pursuant to section 400.01 of this article, a license may be revoked and cancelled at any time in the city of New York, and in the counties of Nassau and Suffolk, by the licensing officer, and elsewhere than in the city of New York by any judge or justice of a court of record; a license issued pursuant to section 400.01 of this article may be revoked and cancelled at any time by the licensing officer or any judge or justice of a court of record. The official revoking a license shall give written notice thereof without unnecessary delay to the executive department, division of state police, Albany, and shall also notify immediately the duly constituted police authorities of the locality.

N.Y. Penal Law § 400.00(11) (emphasis added).[4] Section 400.00(11)(c) governs the consequences of license suspension and revocation:

> **(c) In any instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an**

---

[4] The language in bold was added to Section 400.00(11) by the SAFE Act of 2013. (ECF No. 32-2 at 32-33.) The Act – enacted after "a series of mass shooting around the United States by mentally disturbed individuals," *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 307 (W.D.N.Y. 2018) – was designed to "protect New Yorkers by reducing the availability of assault weapons and deterring the criminal use of firearms while promoting a fair, consistent and efficient method of ensuring that sportsmen and other legal gun owners have full enjoyment of the guns to which they are entitled." (ECF No. 32-1 at 6.) The SAFE Act also added subparagraph (b), which focuses on license revocation for individuals deemed by a mental health provider likely to harm themselves or others. (ECF No. 32-2 at 33.) The parties agree that the plaintiff's pistol license was not revoked for mental health reasons. (ECF No. 31-1 ¶ 36.)

> appropriate law enforcement agency as provided in subparagraph (f) of paragraph one of subdivision a of section 265.20 of this chapter. **In the event such license, firearm, shotgun, or rifle is not surrendered, such items shall be removed and declared a nuisance and any police officer or peace officer acting pursuant to his or her special duties is authorized to remove any and all such weapons.**

N.Y. Penal Law § 400.00(11)(c) (emphasis added).

## II. Nassau County Policies

On May 22, 2014, the Nassau County Police Department published a legal bulletin that explained the consequences of a handgun license suspension or revocation. (ECF No. 31-1 ¶ 44.) According to the bulletin, "a person whose handgun license is suspended or revoked *for any reason* is not only required to surrender [his] license and handguns but also [his] rifles and shotguns to the licensing authority (Nassau County Police Department)." (ECF No. 27-5 at 3 (emphasis added).)

A separate Nassau County Police Department policy entitled "Removal and Disposition of Weapons – Domestic Incidents/Threats to Public Safety" ("OPS 10023" or the "policy") establishes a procedure for removing both firearms and longarms when necessary, and for returning them. (ECF No. 31 at 10.)[5] The protocol distinguishes between the investigation required for the return of a pistol license and firearms and that for the return of longarms. (*Id.* at 2-3.) For example, unlike the "full pistol license incident investigation" required for firearm return, the longarm investigation begins with a review of "all incidents involving confiscation of rifles and shotguns as soon as possible." (*Id.*) Confiscated longarms should be returned to the

---

[5] At oral argument on September 19, 2019, counsel for the County explained that a new policy governs the return of longarms, but it is not clear what the policy is, where it is memorialized, or to what extent it differs from OPS 10023. In any event, the policy is not part of the record before me.

4

owner if the confiscation was inappropriate or if there is no other condition barring longarm possession.[6] (ECF No. 31 at 13-14.)

The plaintiff says that under the County's policy, a "licensee would only be able to lawfully possess long guns after [the licensee] reapplied for, and w[as] issued, another pistol license." (ECF No. 26 at 16.)

## II. The Facts[7]

The plaintiff, a customs broker[8] and resident of Merrick, New York, obtained a pistol license from the Nassau County Police Department in January of 2003. (ECF No. 28 ¶¶ 2, 4, 5.) He maintained the license until May 28, 2008, when he was arrested for conspiracy to import controlled substances under 21 U.S.C. § 963. (ECF No. 28 ¶ 8.) The arresting officer confiscated the plaintiff's pistol license and two pistols. (*Id.* ¶ 10.)

About a week later, drug enforcement officers returned to the plaintiff's house and confiscated his six longarms – two shotguns and four rifles. (*Id.* ¶ 11, *see also* ECF No. 24 at 19.) An officer returned the longarms to the plaintiff six to eight weeks later. (ECF No. 28 ¶ 13.) The plaintiff stored the longarms at a neighbor's home. (*Id.*)

The plaintiff's pistol license was suspended on September 11, 2008 because of his May 2008 arrest. (*Id.* ¶ 12.)

---

[6] Under OPS 10023, longarm possession may be prohibited if (a) the owner is prohibited from possessing rifles or shotguns under the Federal Gun Control Act, (b) the owner has a relevant pending court disposition, (c) the owner is a subject of an order of protection, (d) the owner has a relevant Nassau County arrest history, (e) domestic incidents have occurred since the time of the confiscation or voluntary surrender, or (f) there are other extenuating circumstances that indicate that the longarms should not be returned. (ECF No. 31 at 13.)

[7] Unless otherwise noted, the factual background is based on my review of the entire record, including the parties' 56.1 statements.

[8] According to the plaintiff, a customs broker "prepares the customs entry paperwork" for commerce entering the United States. (ECF No. 27-3 at 5.)

5

On June 15, 2012, the plaintiff pleaded guilty to misdemeanor conspiracy to defraud the United States, 18 U.S.C. § 371, and was assessed a penalty of $25.00 (*Id.* ¶ 14; *see also* ECF No. 24 at 30.)

Over three years later, in November of 2015, Nassau County revoked the plaintiff's pistol license based on his "[a]rrest history, [c]onviction under 18 U.S.C. § 371, and [l]ack of good moral character." (ECF No. 28 ¶ 15.) In the revocation notice, the County informed the plaintiff that he was "prohibited from possessing firearms, rifles, [and] shotguns." (ECF No. 27-2 at 2-3.) The County instructed the plaintiff to "take appropriate action" to get rid of his guns, including longarms, within thirty days of receipt of the letter.[9] (*Id.* at 3.) Shortly thereafter, the plaintiff's brother, an attorney, recommended that the plaintiff get rid of his longarms. (ECF No. 28 ¶ 20.) The plaintiff gave them to his son-in-law, a "hunting buddy," and a friend. (ECF No. 27-3 at 9.)

It is not clear whether the plaintiff would be able to buy new longarms at present. The plaintiff acknowledges that he has not tried to buy new longarms, but says that the County has "extinguished . . . his ability to purchase other longarms for fear of arrest and criminal prosecution by Nassau County." (ECF No. 26 at 19.) In briefing and through their witness, Lieutenant Marc Timpano,[10] the County took the position that "the plaintiff would be prohibited from possessing long guns for as long as a legal impediment existed prohibiting such possession." (ECF No. 31-2 at 3; ECF No. 31 at 7.) At oral argument, counsel for the County said that the County no longer uses the letter that the plaintiff received,[11] and that it is "now clear

---

[9] The plaintiff appealed the pistol license revocation; his appeal was denied. (ECF No. 24 at 20.)

[10] Lieutenant Timpano, a Nassau County police officer and proffered expert in the policies of the Nassau County Police Department on firearm and longarm possession (ECF No. 31-1 ¶ 23), testified that someone in the plaintiff's position may not be able to buy a longarm because a background investigation would reveal that his pistol license was revoked, (ECF No. 27-1 at 55:23-56:24).

[11] The new letter is not part of the record.

that someone whose pistol license has been revoked, and surrenders longarms at the time of the revocation, is free after the confiscation of his longarms to go out and purchase other longarms." The County did not explain how the plaintiff would have learned of the policy change, or the extent to which a background check, which would have alerted a gun dealer that the plaintiff's license had been revoked, would have been an impediment to purchasing a longarm.

### III. The Claims

The plaintiff alleges that Nassau County has an unconstitutional policy of requiring people who have had their pistol license "revoked *for any reason* to surrender possession and ownership of their longarms." (ECF No. 26 at 1 (emphasis in original).) Because the policy "criminaliz[es] the possession of longarms by individuals whose pistol license has been revoked *for any reason*," the plaintiff says, it prohibits people in his position from possessing longarms, even though no license is required to possess a longarm. (*Id.* (emphasis in original).) The plaintiff also alleges that Nassau County does not provide due process to longarm owners because a "licensee would only be able to lawfully possess long guns after [he] reapplied for, and w[as] issued, another pistol license." (*Id.* at 16.)

The defendant responds that Nassau County is merely enforcing New York Penal Law § 400.00(11) by issuing the plaintiff a revocation notice that instructs him to get rid of his longarms. (ECF No. 24-2 at 1.) The defendant says that no hearing is necessary under these circumstances since Nassau County officials did not take the plaintiff's weapons or have custody of them; he gave the guns to his friends and family. (*Id.*; *see also* ECF No. 24-2 at 14-15.) The County further posits that if a hearing is necessary, the County already has a process in place, OPS 10023, designed specifically for longarm return. (ECF No. 31 at 5.)

7

## LEGAL STANDARD

A movant is "entitled to judgment as a matter of law" when the submissions, including deposition transcripts, affidavits, or other documentation, show "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 453-54 (S.D.N.Y. 2012) ("While disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted.") (quoting *Anderson*, 477 U.S. at 248).

"Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See, e.g. Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

## DISCUSSION

The plaintiff alleges violations of his First, Second, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, a Section 1983 conspiracy, and municipal liability. The parties cross-moved for summary judgment on all of the plaintiff's claims.

I dismiss the plaintiff's First Amendment and conspiracy claims as abandoned because he did not address them in his submissions.[12] *See Nansaram v. City of New York*, No. 12-CV-5038, 2015 WL 5518270, at *8 (E.D.N.Y. Sep. 17, 2015) (dismissing claims that plaintiff did not address in his brief in opposition to defendants' motion for summary judgment); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases and deeming abandoned claims that plaintiff did not address in his opposition to motion for judgment on the pleadings). I address the remaining claims in turn.

### I. Individual Claims

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Ostroski v. Town of Southhold*, 443 F.Supp.2d 325, 335 (E.D.N.Y. 2006) (citing *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)). The challenged conduct must (a) be attributable at least in part to action under the color of state law, and (b) deprive the plaintiff of a right guaranteed under the Constitution of the United States. *Id.* (citing *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)).

Police officers performing their duties as officers act under the color of state law, *see Miron v. Town of Stratford*, 976 F. Supp. 3d 120, 135 (D. Conn. 2013) ("An official acts under color of state law for Section 1983 purposes when the official exercises a power possessed by

---

[12] At oral argument, counsel for the plaintiff confirmed that these claims were abandoned.

9

virtue of state law and made possible only because the wrongdoer is cloaked with the authority of state law."), so the question is whether the County, through its officers, violated the plaintiff's constitutional rights.

A. Second Amendment

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST, amend. II. While the Amendment "codifi[es] a preexisting . . . individual right to possess and carry weapons," it does not permit people "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592, 626 (2008).[13] "[T]he contours of [the right to bear arms] are as of yet underdeveloped and ill-defined." *Doutel v. City of Norwalk*, No. 11-CV-1164, 2013 WL 3353977, at *23 (D. Conn. July 3, 2013). In the Second Circuit, "the right to bear arms is not a right to hold some particular gun." *Baher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 429 (S.D.N.Y. 2013) (citations omitted).

The parties dispute the subject of the plaintiff's Second Amendment challenge.[14] The plaintiff claims that he is challenging a county policy that "unlawfully forbid[s the] plaintiff's possession of longarms for reasons outside of the requirements of Penal Law § 400.00(11)[.]" (ECF No. 26 at 18.) The defendant contends that Nassau County is merely enforcing state law;

---

[13] The Second Amendment applies to the states via the Fourteenth Amendment. *McDonald v. Cty. of Chicago, Ill.*, 561 U.S. 742, 130 (2010).

[14] The parties do not dispute the source of a separate policy which is the subject of the plaintiff's due process claim. According to the plaintiff, once a person's longarms are "removed" due to pistol license revocation, he "would only be able to lawfully possess longarms after [he] reapplied for, and w[as] issued, another pistol license." (ECF No. 26 at 16.) The defendant does not dispute that the policy providing for the return of longarms is a county policy; in fact, it argues that its process for longarm return, OPS 10023, provides sufficient due process.

10

according to the defendant, the plaintiff is actually challenging Penal Law § 400.00(11)(c). (ECF No. 24-2 at 13-14.)

*Vives v. City of New York* 524 F.3d 346 (2d Cir. 2008), which neither party cites, is the Second Circuit's principal case addressing alleged constitutional violations by municipalities purporting to enforce state law. According to *Vives*, "a municipality cannot be held liable simply for choosing to enforce the entire Penal Law." *Id.* at 356. Instead, a municipality has a policy for which it may be liable when "it makes a 'meaningful' and 'conscious' choice to carry out [state] law." *Dudek*, 991 F. Supp. 2d at 411 (citing *Vives*, 524 F.3d at 351, 353).

New York Penal Law § 400.00(11)(c) requires law enforcement officers to take certain actions: they are directed to seize longarms from a person who does not surrender his longarms upon revocation of his pistol license under Section 400.00(11)(a). Section 400.00(11)(c) states that longarms "shall be removed and declared a nuisance and any police officer . . . is authorized to remove any and all such weapons." The word "shall" usually imposes a mandatory duty. *See, e.g. Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.") Since the statute directs municipal officials to take certain steps when the law is violated, Nassau County had no meaningful and conscious choice but to enforce the law.[15] *See Vives*, 524 F.3d at 534 n.6

---

[15] The County did not require the plaintiff to do what the statute says, which was to surrender his longarms to a police officer. *See* N.Y. Penal Law § 400.00(11)(c) ("such person shall surrender . . . any and all firearms, rifles, or shotguns . . . to an appropriate law enforcement agency as provided in . . . section 265.20."). Instead, the County, in its revocation notice, instructed the plaintiff to "take the appropriate action to remove any and all firearms," including longarms, "from the Property Bureau" and "transfer . . . ownership" to another person. (ECF No. 24 at 35.) Then, the County permitted him to give his guns to friends and family. That the County procedure is inconsistent with the language of Section 400.00(11) does not mean that it made a "conscious choice" about how to enforce state law. The language of Section 400.00(11)(c) mandates that police officers remove guns from a person who does not surrender them when his firearm license is revoked; the adoption of an inconsistent procedure does not change the mandatory language of the statute.

11

(contrasting a statute that "simply define[d] an offense without directing municipal officials to take any steps to act when the statute [was] violated" with a statute that stated that police officers "must" issue a ticket or summons).

The plaintiff argues that Nassau County was not enforcing the penal law, but its own policy, which prohibits longarm possession when a person loses his pistol license "for any reason." (ECF No. 26 at 3-4.) But the plaintiff did not lose his pistol license "for any reason."[16] Section 400.00(11)(a) states that "a licensee at any time becoming ineligible to obtain a license under this section shall operate as a revocation of the license." N.Y. Penal Law § 400.00(11)(a). The plaintiff's pistol license was revoked for the reasons set forth in the revocation notice: his "arrest history," "conviction of violation of 18 U.S.C. § 371," and "lack of good moral character." (ECF No. 28 ¶ 15.) According to Lieutenant Timpano, these reasons, taken together, constitute "good cause" to revoke a pistol license. (ECF No. 31-2 ¶ 15.) Since a licensing officer may deny someone a pistol license for lack of good moral character and if good cause exists for the denial (New York Penal Law §§ 400.00(1)(b)-(n)), the revocation – and subsequent instruction to remove longarms – is squarely within state law. The plaintiff lost his pistol license and was instructed to get rid of his longarms because he "became ineligible to obtain a license" for enumerated reasons under New York Penal Law §§ 400.00(1) and 400.00(11) – not merely for "any reason."[17] Thus, the County cannot be held liable in this case for its enforcement of state law.

---

[16] Since the plaintiff did not lose his pistol license "for any reason," I do not reach the question of whether Nassau County's policy of prohibiting longarm possession when a person loses his pistol license "for any reason" (ECF No. 27-5 at 3) comports with state law permitting revocation of a pistol license "at any time," N.Y. Penal Law 400.00(11)(a).

[17] Pursuant to New York Penal Law § 400.00(11)(a), "a licensee at any time becoming ineligible to obtain a license under this section shall operate as a revocation of the notice," and if this happens, "such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or

12

The plaintiff is not challenging Section 400.00, so detailed analysis is unnecessary. Nevertheless, the statute grants police officers extremely broad discretion to issue or revoke a firearm license. *Weinstein*, 386 F. Supp. 3d at 231 (citation omitted). While the parties have not cited, and the Court has not located, any case in which a licensing officer revoked someone's pistol license for lack of good moral character or "good cause," and then instructed him to surrender his longarms, "[m]ultiple cases have upheld the constitutionality of Section 400.00[.]"[18] *Napolitano*, 2019 WL 365710, at *9 n.6. Thus, the defendant's motion for summary judgment on the plaintiff's Second Amendment claim is granted.

B.  **Fourth Amendment**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their . . . papers and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967). A seizure requires "some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (citing *United States*

---

shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency." *Id.* at (11)(c). The plaintiff maintains that the "this section" language in Section 400.00(11)(a) refers only to the reasons spelled out in Section 400.00(11)(a) – specifically, conviction of a felony or serious offense, issuance of an order of protection, or notice under New York mental hygiene law. I do not read the statute that narrowly. The plain language of the statute, and New York's longstanding interpretation of Section 400.00(11), provides that a pistol license can be revoked for reasons other than the situations listed in subsection (11)(a) that the plaintiff highlights. *See, e.g., Nash v. Nassau Cty.*, 52 N.Y.S.3d 670 (2d Dep't. 2017) (citing Section 400.00(11) for the proposition that a licensing officer "is vested with broad discretion in determining whether to issue or revoke a license to possess firearms.")

[18] At least one court in this district has noted the potential *de facto* license requirement on longarms that the statute may impose in certain circumstances, albeit focusing on the "at any time" language of the statute. *See Napolitano*, 2019 WL 365710, at *9 n.6 (noting that since Section 400.00(11)(a) permits a licensing officer to revoke a pistol license "at any time," and Section 400.00(11)(c) requires surrender of one's longarms in the event of revocation under Section 400.00(11)(a), the law "may impose, in certain circumstances, a *de facto* license requirement on longarms.").

*v. Jacobsen*, 466 U.S. 109, 113 (1984)). The "paradigmatic Fourth Amendment seizure contemplates a forcible dispossession of the owner of the items to be seized," *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 482 (S.D.N.Y. 2019) (citation and internal quotation marks omitted), and more recent case law associates the right with a person's "legitimate expectations of privacy," *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (citation omitted). "The chief evil against which the wording of the Fourth Amendment is directed is the physical entry of the home." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) (internal alterations, quotation marks, and citation omitted).

The revocation notice and the plaintiff's subsequent transfer of longarms to friends and family members does not amount to a government seizure under the Fourth Amendment.[19] The revocation notice alerted the plaintiff that he could not possess firearms, rifles, and shotguns, and directed him to get rid of his longarms. (ECF No. 24 at 34-35.) No law enforcement official confiscated or came into possession of the plaintiff's longarms, and the government does not currently have custody or control of the plaintiff's longarms. In short, the government never seized the plaintiff's longarms.

Nevertheless, characterizing this as a "constructive" governmental seizure, the plaintiff says that the defendant violated the Fourth Amendment "by requiring that he divest himself of ownership and possession of his longarms." (ECF No. 26 at 14.) But the plaintiff cites no authority, and I am not aware of any, supporting the proposition that deprivation by revocation notice can constitute a Fourth Amendment seizure. And the facts of this case do not support such a finding. After all, the plaintiff gave away his longarms to his son-in law, a "hunting

---

[19] The plaintiff does not challenge the police officers' original confiscation of his longarms; instead, he challenges the revocation notice he received instructing him to get rid of his firearms. (ECF No. 26 at 19.)

14

buddy," and a friend. (*Id.* at 20-21.) Nothing in the record suggests that the plaintiff does not still have access to the guns. Moreover, the plaintiff testified at his deposition that keeping the guns was "not a priority" at the time so he gave them away; he was "trying to rebuild his life . . . and business" and chose to "get rid of the rifles." (*Id.* at 20-21.) These facts do not make out a Fourth Amendment violation, and the defendant's motion for summary judgment on that claim is granted.

## C. Fourteenth Amendment

The plaintiff argues that Nassau County's failure to provide him a method to seek the return of his longarms violated his Fourteenth Amendment rights. (ECF No. 26 at 15-16.) The defendant, citing the fact that the plaintiff gave the weapons away, responds that no hearing is necessary. (ECF No. 24-2 at 14-15.) The County points out that it has a process in place, OPS 10023, which is specifically designed for the return of longarms. (ECF No. 31 at 5.)

The Fourteenth Amendment provides that no "State deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. To determine the level of process due, "courts must look to the three-part test articulated by the Supreme Court in *Mathews v. Eldridge*." 424 U.S. at 334 (1976). Under the *Mathews* test, courts weigh: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation through the procedures used and the value of additional procedural safeguards; and (3) the government's interest in taking the challenged action." *Id.* at 335 (citing *Razzano*, 765 F. Supp. 2d at 185).

Courts in this district have held that the Nassau County Police Department policy for the return of confiscated longarms provided inadequate *post*-deprivation process. In *Razzano v. County of Nassau*, a gun owner challenged the legal process afforded to him after the police confiscated his longarms in the course of investigating alleged threatening conduct toward a

legislator. 765 F. Supp. 2d at 184. The Honorable Arthur Spatt, in a thoughtful and comprehensive opinion, found that "the pistol license hearing sets an improperly high standard for the return of longarms, and thus risks perpetuating an erroneous deprivation of property." 765 F. Supp. 2d at 188. Judge Spatt held that the County should provide a separate post-deprivation hearing to facilitate the return of longarms to gun owners. *Id.* at 191. More recently, in *Weinstein v. Krumpter*, Weinstein, whose longarms were confiscated during a domestic dispute, challenged the legal process – OPS 10023 – developed for the return of longarms in Nassau County. 386 F. Supp. 3d at 224. Judge Spatt, in another instructive opinion, found that the procedure was "thorough" but lacked sufficient promptness; therefore, it "le[ft] room for a heightened risk of *prolonged* deprivation of undeserving owners of longarms." *Id.* at 236-237 (emphasis added).

Notably, when "a plaintiff alleges a deprivation pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Weinstein*, 386 F. Supp. 3d at 235 (citing *Razzano*, 765 F. Supp. 2d at 185). Both *Razzano* and *Weinstein* were premised, in part, on findings that under the circumstances, a *pre*-deprivation hearing was not possible; in both cases, police officers removed the guns from the plaintiffs' homes in the course of investigating domestic violence – in *Weinstein* – and threatening conduct – in *Razzano*. As Judge Spatt explained in *Razzano*, "the very nature of seizing guns renders it impractical to require the police to hold hearings before taking [a] deadly weapon away from an individual." *Razzano*, 756 F. Supp. 2d at 186. For that reason, Judge Spatt focused exclusively on the adequacy of the post-deprivation remedies available to someone whose longarms were confiscated by the police. *Id.*

The plaintiff's case is different. First, the plaintiff did not receive any post-deprivation hearing; in fact, he received no process related to his longarms at all.[20] Since the County did not seize the plaintiff's longarms, the County's post-deprivation procedure, OPS 10023, was never triggered. As noted earlier, the plaintiff claims that he cannot purchase new longarms "for fear of arrest and criminal prosecution by Nassau County" (ECF No. 26 at 19) – a concern that is justified given the defendant's position, at least at the time, that the plaintiff was prohibited from possessing long guns for as long as a legal impediment existed, (ECF No. 31 at 6). Second, unlike *Razzano* and *Weinstein*, in which police officers removed guns from peoples' homes, the plaintiff got a revocation notice years after his conviction, instructing him to get rid of his firearms, including longarms, not immediately but within thirty days. (ECF No. 27-2 at 3.) There were no "exigent circumstances necessitating the very prompt" removal of the plaintiff's longarms. *Razzano*, 765 F. Supp.2d at 186 (citing *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009)). At oral argument, counsel for the County conceded that the plaintiff's continued possession of his longarms did not pose any danger to the community. In fact, counsel seemed to concede that a pre-deprivation hearing would have been possible under the circumstances of this case.

Application of the *Matthews* test supports a pre-deprivation hearing. Like *Razzano* and *Weinstein*, the first *Matthews* factor weighs in favor of the plaintiff because he has a clear property interest in his longarms. The second *Matthews* factor – the risk of erroneous deprivation – also weighs in the plaintiff's favor because he was not given a hearing on his right to possess longarms. Under these circumstances, the plaintiff has no way of knowing whether a "legal impediment . . . prohibiting" the plaintiff's possession of longarms exists. (*Id.* at 7.)

---

[20] As noted earlier, the plaintiff's appeal of his pistol license revocation was denied. (ECF No. 24 at 20.)

Without any opportunity to be heard, there is a high risk of erroneous – and prolonged erroneous – deprivation.[21]

The third *Matthews* factor – the government's interest in taking the challenged action – also weighs in the plaintiff's favor. Since the County's position was that under the circumstances, no process was necessary, it did not cite the primary governmental interest in seizing longarms – "keeping guns away from dangerous individuals." *Weinstein*, 386 F. Supp. 3d at 237. That argument would be difficult to make in this case, because the County sent the notice years after the plaintiff's conviction and, even then, gave him thirty days to get rid of his guns, a delay that undermines a public safety concern.[22]

Of course, the County could determine, consistent with N.Y. Penal Code § 400.00(11), that someone is prohibited from possessing longarms when his pistol license is revoked and while "a legal impediment . . . prohibiting such possession" exists. (ECF No. 31-2 at 3; ECF No. 31 at 7.) However, consistent with *Razzano* and *Weinstein*, longarm owners are entitled to a prompt investigation into their rights to possess longarms. Under circumstances like this – where there are no exigent circumstances – a gun owner is entitled to a prompt pre-deprivation hearing. Accordingly, the plaintiff's cross-motion for summary judgment on his Fourteenth Amendment claim is granted.

---

[21] In multiple cases challenging Nassau County's longarm regulations and procedures, courts in this district have noted that individuals whose pistol licenses have been revoked have the "ability to purchase additional longarms to replace the weapons seized." *See, e.g., Weinstein*, 386 F. Supp. 3d at 237; *see also Panzella*, 863 F. 3d at 219. In this case, the County argued, at least in its briefing, that "the plaintiff would be prohibited from possessing long guns for as long as a legal impediment existed prohibiting such possession." (ECF No. 31-2 at 3; ECF No. 31 at 7.)

[22] Nor did the County seem to have any interest in the backgrounds of the people to whom the plaintiff gave his guns.

## II. Municipal Liability

A municipality can be held liable when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Serv. of Cty. of New York*, 436 U.S. 658, 690 (1978). The plaintiff argues that the alleged constitutional violations were pursuant to an official policy of Nassau County. (ECF No. 26 at 3.) The defendant responds that it cannot be held liable under *Monell* because the plaintiff cannot establish that any Nassau County policy is unconstitutional. (ECF No. 24-2 at 17.)

As discussed above, the County policy did not violate the plaintiff's Second or Fourth Amendment rights. However, the County's failure to provide the plaintiff with any due process in connection with his longarms violated the Fourteenth Amendment. Accordingly, the Court grants the defendant's cross-motion for summary judgment as it pertains to the plaintiff's Second and Fourth Amendment *Monell* claims. The Court grants the plaintiff's cross-motion for summary judgment as it pertains to his Fourteenth Amendment *Monell* claim.

## CONCLUSION

For the reasons set forth above, the plaintiff's cross-motion for summary judgment is granted with respect to his Fourteenth Amendment procedural due process claim and related *Monell* claim; the remainder of the motion is denied. The defendant's cross-motion for summary judgment is granted with respect to the plaintiff's First, Second, and Fourth Amendment claims, the related *Monell* claims, and the Section 1983 conspiracy claim; the remainder of the motion is denied.

The Court respectfully refers this case to United States Magistrate Judge James Orenstein for a determination of potential damages stemming from the defendant's Fourteenth Amendment violation.

**SO ORDERED.**

                                                                s/Ann M. Donnelly
                                                                _____
                                                                Ann M. Donnelly
                                                                United States District Judge

Dated: Brooklyn, New York
        September 30, 2019